# United States Court of Appeals
# for the First Circuit

A WOMAN'S CONCERN, INC., D/B/A YOUR OPTIONS MEDICAL CENTERS,

*Plaintiff-Appellant,*

*v.*

MAURA T. HEALEY, GOVERNOR OF MASSACHUSETTS, sued in her individual and official capacities; ROBERT GOLDSTEIN, COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, sued in his individual and official capacities; REPRODUCTIVE EQUITY NOW FOUNDATION, INC.; REBECCA HART HOLDER, EXECUTIVE DIRECTOR OF REPRODUCTIVE EQUITY NOW FOUNDATION, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

## PROPOSED BRIEF OF LIFE LEGAL DEFENSE FOUNDATION IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

CATHERINE W. SHORT
 *Counsel of Record*
SHEILA A. GREEN
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024-1313
(707) 337-6880
kshort@lifelegal.org
Counsel to *Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Under Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus* Life Legal Defense Foundation certifies that it is a non-profit corporation with no stock or parent corporations.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .............................................................i

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF *AMICUS CURIAE* .......................................................1

SUMMARY OF ARGUMENT ....................................................................3

ARGUMENT ..............................................................................................5

    I.    Defendants' campaign against PRCs is motivated by animus against centers' viewpoint that abortion is a moral wrong. .......................................5

    A.    Plaintiff YOM does not provide or promote abortion. ................................5

    B.    Defendants are part of a post-Dobbs collaboration among pro-abortion Attorneys General to attack the pro-life work of PRCs. ....................................6

    C.    Defendants are politically and ideologically committed to promoting abortion. ....................................................................................................8

    II.    Defendants Have Violated YOM's Right to Equal Protection of the Law .10

    A.    Abortion clinics are a proper comparator  to YOM...................................11

        1.    Like YOM, abortion clinics also provide "limited" reproductive health care…………………………………………………………………………12

        2.    YOM, like abortion clinics, is licensed...................................................14

    B.    Defendants, throughout their anti-AAC campaign, identified abortion clinics as the proper comparator....................................................................17

    C.    YOM has sufficiently alleged differential treatment. ...............................19

CONCLUSION ........................................................................................25

RULE 32 (g) CERTIFICATE OF COMPLIANCE ..................................27

# TABLE OF AUTHORITIES

**Cases**

*Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp.,*
  246 F.3d 1 (1st Cir. 2001)................................................................22, 25

*Berk v. Choy*, 607 U.S. 187 (2026)........................................................24

*Culture of Life Fam. Servs. v. Bonta*, 789 F. Supp. 3d 902 (S.D. Cal. 2025) ...........8

*Doe v. City of Boston*, 145 F.4th 142 (1st Cir. 2025)................................26

*First Choice Women's Res. Ctrs., Inc. v. Davenport,*
  224 L. Ed. 2d 672, 678 (2026) ....................................................7, 22

*Nat'l Ins. of Fam. & Life Advocs. v. James*, 746 F. Supp. 3d 100 *aff'd,* 160 F.4th
  360 (2d Cir. 2025) ....................................................................8

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 ...........................6, 25

*Nat'l Inst. Of Fam. & Life Advocs. v. Bonta*, 769 F. Supp. 3d 1109 (C.D. Cal. 2025)
  ..........................................................................................8

*Nat'l Rifle Assoc. of Am. v. Vullo,* 602 U.S. 175 (2024) ..............................5, 16, 20

*Ocasio-Hernandez v. Fortuno-Burset,* 640 F.3d 1 (1st Cir. 2011) ...........................4

*Rodi v. S. New Eng. Sch. Of Law*, 389 F.3d 5 (1st Cir. 2004)...........................5, 21

*Roe v. Wade*, 410 U.S. 113 (1973)........................................................2

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..................................................5

*Tapalian v. Tusino*, 377 F.3d 1 (1st Cir. 2004)......................................10, 11, 17, 19

**Statutes**

Mass. Gen. Laws Ch. 272, § 21B.........................................................................5

**Other Authorities**

*Anti-Abortion Centers (AACs)*, Office of the Attorney General,
   https://www.mass.gov/info-details/anti-abortion-centers-aacs (last visited June 2,
   2026) .............................................................................................................15

Caroline Kimball-Katz, *In First Gubernatorial Debate, Maura Healey Vows to Use
   Powers of the Governor to Expand Abortion Access*, Planned Parenthood
   Advocacy Fund of Massachusetts, Inc. (Oct. 13, 2022, at 3:43 p.m.) ...................9

Caroline Kimball-Katz, *Planned Parenthood Advocacy Fund of
   Massachusetts Endorses Maura Healey, Kim Driscoll, and Andrea Campbell*,
   Planned Parenthood Advocacy Fund of Massachusetts (June 28, 2022, at 1:24
   p.m.) .............................................................................................................9

*Check a Licensee's Profile – FindMyDoctor.mass.gov and
   FindMyAcupuncturist.mass.gov*, Executive Office of Health and Human
   Services, https://www.mass.gov/check-a-licensees-profile-
   findmydoctormassgov-and-findmyacupuncturistmassgov (last visited June 6,
   2026) .............................................................................................................21

*Dr. Robert Goldstein Appointed Commissioner of the Massachusetts Department of
   Public Health*, Executive Office of Health and Human Services (Apr. 4, 2023).10

Four Women Health Services, https://www.fourwomen.com/about-us/ (last visited
   June 4, 2026) .................................................................................................12

*FY24 Annual Report*, Planned Parenthood League of Massachusetts,
   https://www.storydoc.com/df40b7dc09a4c4ed91a6ec7724784c51/89144dec-

ad8b-4895-bb8d-df8046d898fe/678538bb32f859131ad0700f (last visited June 5, 2026) ......................................................................................................13

Hannah Hartig, Andy Cerda & Asta Kallo, *Majority of Americans Continue to Say Abortion Should Be Legal in All or Most Cases*, Pew Research Center (Mar. 12, 2026), https://www.pewresearch.org/politics/2026/03/12/majority-of-americans-continue-to-say-abortion-should-be-legal-in-all-or-most-cases/...........................9

*History of Planned Parenthood*, Planned Parenthood, https://www.plannedparenthood.org/about-us/who-we-are/our-history (last visited May 11, 2026)........................................................................................9

*Massachusetts Gov. Maura Healey*, National Governors Association, https://www.nga.org/governor/maura-healy/ (last visited May 26, 2026) .............9

*Our bureaus and offices*, Department of Public Health, https://www.mass.gov/orgs/department-of-public-health (last visited June 6, 2026) ......................................................................................................20

*Our Founder and Medical Director, Dr. Laurent Delli-Bovi*, Women's Health Services, https://womenshealthservice.com/about-us/ (last visited June 1, 2026) ......................................................................................................21

*Profile of Laurent C. Delli-Bovi*, BORIM, https://findmydoctor.mass.gov/profiles/41986 (last visited June 6, 2026) ..........21

*Robbie Goldstein*, Ballotpedia, https://ballotpedia.org/Robbie_Goldstein (last visited May 11, 2026).....................................................................................10

Tapestry Health, https://www.tapestryhealth.org/ (last visited June 1, 2026).........12

Women's Health Services, https://womenshealthservice.com/ (last visited June 1, 2026) ......................................................................................................12

## STATEMENT OF *AMICUS CURIAE*[1]

*Amicus* Life Legal Defense Foundation ("Life Legal"), founded in 1989, is a California nonprofit corporation that provides legal assistance to pro-life advocates. Life Legal is concerned about state and federal governments' use of their legislative and executive powers to thwart the efforts of those who oppose abortion. On numerous occasions, Life Legal has assisted pregnancy resource centers that were the subjects of state-issued subpoenas and has observed the excessive burden that they place on such centers. The extra work involved in responding to subpoenas oftentimes interferes with their ability to perform their mission of helping women who wish to continue their pregnancies and raise their babies. In Life Legal's experience, many, if not most, centers do not have available staff to respond to such requests and, as a result, must divert other staff from their normal duties of helping women. Life Legal is concerned that excessive use of the state's investigatory powers can all too easily be employed to stifle the activities and speech of groups whose goals and messages are ideologically opposed by the state.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for amici represent that no counsel for a party authored this brief in whole or in part and that no person or entity, other than amici or their counsel, made a monetary contribution to the preparation or submission of this brief.

With the overturning of *Roe v. Wade*, 410 U.S. 113 (1973), and the return of the issue of abortion "to the people and their elected representatives," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 302 (2022), the need to protect the speech of pro-life citizens has taken on renewed significance. Courts must resist the attempts of governments at any level to use their powers to target pregnancy resource centers, like plaintiff here, which provide vital support and resources for women who wish to continue their pregnancies.

## SUMMARY OF ARGUMENT

In response to the United States Supreme Court's opinion in *Dobbs*, a group of pro-abortion state Attorneys General collaborated on a plan to undermine the work of pro-life pregnancy resource centers ("PRCs"). As part of the plan, the Attorneys General used their offices to push a biased narrative, namely that these charities are deceptive and dangerous because they provide limited healthcare services as compared to abortion businesses.

Massachusetts kicked off its smear campaign against PRCs without any evidence, only its own bald accusations. Indeed, one of the goals of the campaign was to encourage and generate consumer complaints against PRCs, because, prior to the campaign, there weren't any. But despite the Defendants' best efforts, to this day, the single complaint against Plaintiff was lodged by defendant Reproductive Equity Now Foundation ("REN").

Statements by the defendants to the media, on government websites, and in non-public documents reveal their true intention: to viciously attack PRCs, to drain their resources and diminish their impact, and to steer pregnant women to abortion clinics.

Plaintiff A Women's Concern, D/B/A Your Options Medical (hereafter "YOM"), sued to stop this illegal campaign of state-sponsored harassment. In granting the state's motion to dismiss the complaint, the district court, rather than

viewing the allegations in the light most favorable to YOM, instead acted like defense counsel, looking for gaps, poking holes, and ignoring the larger picture of Defendants' blatantly political campaign to undermine the work of PRCs.

As discussed in particular in this brief, the district court dismissed YOM's Equal Protection claim, determining that abortion clinics are not a "proper comparator" and that YOM, a licensed medical clinic, had not been subjected to discriminatory treatment as compared to other licensed medical clinics that provide abortions. In so doing, the court accepted without question the Defendants' justifications for their campaign against PRCs, namely, (1) that the campaign was to warn the public about unlicensed pregnancy centers, and (2) the campaign intended to alert the public about facilities that did not provide "comprehensive" reproductive care.

Neither of these justifications stands up to scrutiny. Moreover, the fact that the Defendants argue a defense for their actions is not a reason to dismiss the complaint at the pleading stage. On a motion to dismiss, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). At the pleading stage, "our task is not to decide whether the plaintiff ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim." *Rodi v. S. New*

*Eng. Sch. Of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The order granting the state's motion to dismiss should be reversed and the complaint reinstated.

**ARGUMENT**

**I. Defendants' campaign against PRCs is motivated by animus against centers' viewpoint that abortion is a moral wrong.**

In a motion to dismiss, the court "must assume the well-pleaded factual allegations in the complaint are true," *Nat'l Rifle Assoc. of Am. v. Vullo,* 602 U.S. 175, 195 (2024), and must "draw reasonable inferences in [YOM's] favor and consider the allegations as a whole." *Id*. The court should not "tak[e] the allegations in isolation." *Id*. at 194.

**A. Plaintiff YOM does not provide or promote abortion.**

Plaintiff YOM is a medical clinic licensed by Massachusetts and subject to inspections every two years. Appellant's Opening Brief ("AOB") 4. It does not provide abortions, nor is it legally or ethically obligated to do so. *See* Mass. Gen. Laws Ch. 272, § 21B.[2] Indeed, most health care providers put some limits on the

---

[2] The issue of providing "referrals" for abortion, or not, is a red herring. No woman in Massachusetts needs a referral in order to locate or obtain an abortion. All she needs is the Internet or a phone book. Nor will she be delayed in finding a

range of care they provide. For example, many abortion clinics that advertise themselves as providing "reproductive health services" do not provide prenatal care. *See* Sec. II.A.1. (abortion clinics do not provide prenatal care).

The Supreme Court has held that PRCs are constitutionally protected against being forced to provide information about abortions, and particularly about how and where to obtain abortions. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018) (holding that the California Reproductive FACT Act, which required crisis pregnancy centers to provide notices to clients about the availability of abortion, violated the First Amendment). So PRCs are squarely within their rights under state and federal law to not provide services or information that violates their beliefs that abortion is the taking of a human life.

**B. Defendants are part of a post-Dobbs collaboration among pro-abortion Attorneys General to attack the pro-life work of PRCs.**

In reaction to the *Dobbs* opinion finding no federal constitutional right to abortion, sixteen state Attorneys General—including Massachusetts Attorney General Andrea Campbell—joined together in issuing an Open Letter which promoted a false narrative about PRCs supposed dangerous and deceptive tactics. The Open Letter echoed the same slanted "warnings" mentioned by the State of

---

"trusted" abortion provider since, according to Defendants, no abortion provider is so "untrusted" as to warrant a consumer advisory.

Massachusetts in its various "advisories." AOB 23-24. For instance, the letter claimed: "CPCs *do not provide full-scope reproductive healthcare* and often *use deceptive tactics* to lure in patients seeking reproductive healthcare. These tactics can have *dire health consequences and rob patients of their healthcare choices*."[3]

Subsequent to signing, several Attorney General signatories to the Open Letter embarked upon campaigns to stifle pro-life speech and activities. New Jersey's Attorney General issued subpoenas to a PRC seeking donor information, with the stated aim of finding out if any donors had been deceived into thinking that they were giving money to an abortion clinic. As in this case, no complaints had been filed against the PRC that would have prompted issuance of the subpoena. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 224 L. Ed. 2d 672, 678, 691 (2026) (holding that Attorney General's subpoena on plaintiff demanding donor information established a present injury under Art. III). In New York and California, the Attorneys General filed state actions against PRCs accusing them of deceptive advertising with respect to statements about abortion pill reversal ("APR"). In no case has actual harm to any woman from APR ever been alleged. *Nat'l Ins. of Fam. & Life Advocs. v. James*, 746 F. Supp. 3d 100, 122, *aff'd,* 160

---

[3] Rob Bonta*, Open Letter from Attorneys General Regarding CPC Misinformation and Harm*, p. 1, Office of the Attorney General (Oct. 23, 2023), https://oag.ca.gov/system/files/attachments/press-docs/Open%20Letter%20re%20Crisis%20Pregnancy%20Centers%20FINAL.pdf (emphases added).

F.4th 360 (2d Cir. 2025) (granting preliminary injunction and preventing Attorney General of New York from bringing a civil enforcement action against NIFLA for speech about APR); *Culture of Life Fam. Servs. v. Bonta*, 789 F. Supp. 3d 902 (S.D. Cal. 2025) (denying state of California's motion to dismiss on the basis of free speech, and granting it on free exercise, and substantive due process grounds); *Nat'l Inst. Of Fam. & Life Advocs. v. Bonta*, 769 F. Supp. 3d 1109 (C.D. Cal. 2025) (holding that speech about APR is "commercial" and denying plaintiff's motion for preliminary injunction).

In Massachusetts, the government effort to blunt the pro-life advocacy of YOM and other PRCs has taken the forms of alienating medical professionals through its licensure advisory, App. 125-130; dissuading women from seeking care from PRCs with the "Avoid Anti-Abortion Centers" media campaign and declaring YOM and other PRCs to be "dangerous" on various Defendants' websites, App. 131-71; and forcing the diversion of PRC resources by soliciting complaints from the public and engaging in targeted investigations. AOB 29-32.

**C. Defendants are politically and ideologically committed to promoting abortion.**

It is well known that there is a growing partisan political divide on the issue of abortion. In a 2026 survey, 84% of Democrats said they believed that abortion should be legal in all or most cases while only 36% of Republicans believed the

same, representing a forty-eight-percentage point difference. In 2007, the percentage point divide was only twenty-four points, with 39% of Republicans and 63% of Democrats favoring legal abortion.[4] This means that, in under twenty years, the division has doubled—with almost the entirety of the change coming from Democrats becoming more strongly entrenched on this issue.

Defendant Gov. Maura Healey is a Democrat,[5] campaigned on a platform to "protect and defend a woman's access to abortion,"[6] and was endorsed by Planned Parenthood,[7] the nation's largest abortion provider.[8] Defendant Commissioner of Massachusetts Department of Public Health ("DPH") Robert Goldstein ran as a

---

[4] Hannah Hartig, Andy Cerda & Asta Kallo, *Majority of Americans Continue to Say Abortion Should Be Legal in All or Most Cases*, Pew Research Center (Mar. 12, 2026), https://www.pewresearch.org/politics/2026/03/12/majority-of-americans-continue-to-say-abortion-should-be-legal-in-all-or-most-cases/.
[5] *Massachusetts Gov. Maura Healey*, National Governors Association, https://www.nga.org/governor/maura-healy/ (last visited May 26, 2026).
[6] Caroline Kimball-Katz, *In First Gubernatorial Debate, Maura Healey Vows to Use Powers of the Governor to Expand Abortion Access*, Planned Parenthood Advocacy Fund of Massachusetts, Inc. (Oct. 13, 2022, at 3:43 p.m.), https://www.plannedparenthoodaction.org/planned-parenthood-advocacy-fund-massachusetts-inc/pressroom/in-first-gubernatorial-debate-maura-healey-vows-to-use-powers-of-the-governor-to-expand-abortion-access.
[7] Caroline Kimball-Katz, *Planned Parenthood Advocacy Fund of Massachusetts Endorses Maura Healey, Kim Driscoll, and Andrea Campbell*, Planned Parenthood Advocacy Fund of Massachusetts (June 28, 2022, at 1:24 p.m.), https://www.plannedparenthoodaction.org/planned-parenthood-advocacy-fund-massachusetts-inc/pressroom/planned-parenthood-advocacy-fund-of-massachusetts-endorses-maura-healey-kim-driscoll-and-andrea-campbell.
[8] *History of Planned Parenthood*, Planned Parenthood, https://www.plannedparenthood.org/about-us/who-we-are/our-history (last visited May 11, 2026).

Democrat in 2020 for Massachusetts' 8th Congressional District[9] and was appointed to serve as Commissioner in 2023 under the administration of Gov. Healey.[10] Defendants Reproductive Equity Now ("REN") exists to promote abortion, and its Executive Director Rebecca Hart Holder can reasonably be assumed to share that commitment. Therefore, all Defendants are philosophically and politically motivated to promote abortion and oppose pro-life advocacy.

## II. Defendants Have Violated YOM's Right to Equal Protection of the Law

To prove a violation of Equal Protection, a plaintiff must show that "compared with others similarly situated, [it] was selectively treated." *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004). Selective treatment involves finding a comparator that was treated differently.

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

---

[9] *Robbie Goldstein*, Ballotpedia, https://ballotpedia.org/Robbie_Goldstein (last visited May 11, 2026).
[10] *Dr. Robert Goldstein Appointed Commissioner of the Massachusetts Department of Public Health*, Executive Office of Health and Human Services (Apr. 4, 2023), https://www.mass.gov/news/dr-robert-goldstein-appointed-commissioner-of-the-massachusetts-department-of-public-health.

*Id.* at 6.

YOM alleged that the Defendants' actions violated its right to Equal Protection because abortion providers had not been subject to the same campaign of threatened regulatory action, public denunciation, and prolonged investigations into minor, technical lapses.

The district court disagreed, holding that abortion clinics are not a proper comparator and explaining away all the Defendants' actions as legitimate regulatory responses by a justifiably concerned public health agency. In so doing, it erred both in the particulars of its analysis and in its overall approach to YOM's allegations.

### A. Abortion clinics are a proper comparator to YOM.

The lower court found that "YOM ha[d] not identified a proper comparator" because, unlike abortion providers, PRCs 1) "offer a limited set of medical services to pregnant patients," and 2) are in large part, unlicensed. Addendum to AOB ("Add.") 55-56. The court stated, "YOM has not alleged that abortion providers, too, refuse to provide certain pregnancy-related medical services," nor that they are largely unlicensed. *Id.* The court concluded, "These differences are material to this case, where the state launched a campaign for the precise purpose of educating the public about PRCs' limited scope of medical services and potential deviation from state medical laws and licensure requirements." *Id.*

Neither of these justifications stands up to scrutiny.

1. *Like YOM, abortion clinics also provide "limited" reproductive health care.*

As to the "limited scope of medical services," whether or not a facility "refuses" to provide certain services, as opposed to simply failing to provide them, should be irrelevant to the state's purpose in educating the public. On that score, the district court simply assumed, without any evidence, that abortion providers have no limits on the services they provide pregnant women. *This assumption is grossly off the mark*. Many abortion providers in Massachusetts provide no prenatal care and are entirely unequipped to deliver babies.[11]

To take one prominent example, in its 2024 Annual Report, Planned Parenthood League of Massachusetts, which runs three abortion facilities in Massachusetts, reports over 9400 abortions, but did not provide a single patient with pre-natal care.[12] Indeed, like many other Massachusetts abortion providers, its

---

[11] See, e.g., Women's Health Services, https://womenshealthservice.com/ (last visited June 8, 2026) (no prenatal care); Tapestry Health, https://www.tapestryhealth.org/ (last visited June 8, 2026) (no prenatal care); Four Women Health Services, https://www.fourwomen.com/about-us/ (last visited June 8, 2026) (no prenatal care).

[12] *FY24 Annual Report*, Planned Parenthood League of Massachusetts, https://www.storydoc.com/df40b7dc09a4c4ed91a6ec7724784c51/89144dec-ad8b-4895-bb8d-df8046d898fe/678538bb32f859131ad0700f (last visited June 5, 2026).

website does not list prenatal care or maternity care as available services.[13] Yet, Defendants have not embarked on a public information campaign to inform women considering their pregnancy options that they should avoid clinics like Planned Parenthood which lure them with the promise of providing "comprehensive" reproductive health care, but do not in fact do so. Instead, Defendants have attempted to steer all pregnant women to "trusted" abortion providers, despite these providers' own "limited scope of medical services."

In Defendants' campaign, they did not focus on "non-comprehensive reproductive care centers." They focused on the lightning rod of abortion and dubbed PRCs as "Anti-*Abortion* Centers," pinpointing abortion, to the promotion of which they are politically and ideologically committed, as the focal issue. App. 29 ("there are nearly 30 anti-abortion centers that operate in the state"); *Id*. (DPH seeking feedback from "individuals who have had concerning experiences with anti-abortion centers."); App. 32 (campaign to "highlight[] the dangers and potential harms of anti-abortion centers"); App. 33 (DPH web pages such as the one entitled "Avoid Anti-Abortion Centers"); App. 35 (REN's *Guidebook on Identifying and Taking Action Against Anti-Abortion Centers in New England*); *see*

---

[13] *Greater Boston Health Center of Boston, MA,* Planned Parenthood, https://www.plannedparenthood.org/health-center/massachusetts/boston/02215/greater-boston-health-center-3293-90610 (last visited June 8, 2026).

*also* App. 37, 46-48. Defendants knew that YOM and other PRCs are "anti-abortion."

The fact that PRCs do not offer "comprehensive" reproductive health services is not what inspired Defendants' actions; if it had been, then Defendants would have similarly called out Planned Parenthood and other abortion providers for not providing prenatal care. "Limited medical service" providers like Planned Parenthood are indeed a proper comparator for assessing YOM's Equal Protection Claim.

### 2. *YOM, like abortion clinics, is licensed.*

The court cited the fact that most PRCs are unlicensed, and that most abortion providers in Massachusetts are licensed, as a reason why abortion clinics are not a valid comparator. Add. 56. This justification also fails.

First, YOM is licensed and is representing only itself, not a class of PRCs. Add. 19. Thus, a supposed difference in licensing is not a valid reason to reject abortion clinics as proper comparators to YOM.

Furthermore, the state attacked *both licensed and unlicensed* pro-life PRCs. On July 6, 2022, just twelve days after the *Dobbs* decision, then-Attorney General Healey issued a press release (the "July 6 press release") warning pregnant women about all CPCs *in general*. App. 85-87. The press release linked to an advisory which contained a warning in bold: "**WARNING: AACs do NOT provide**

**comprehensive reproductive healthcare. AACs are organizations that seek to prevent people from accessing abortion care**."[14] Like the Open Letter, the advisory and July 6 press release also warned of supposedly deceptive advertising, inaccurate and misleading information, and appointment delays caused by PRCs. Nowhere did Healey urge women to go only to licensed "AACs." Instead, she warned them against going to *any* "AAC."

Yet, the lower court—focusing narrowly on seven sentences in Healey's two-page press release—held that "a significant portion of the press release was dedicated to warning the public about the dangers of <u>unlicensed</u> PRCs, as opposed to licensed clinics like YOM." Add. 5. This is inaccurate. In fact, the most "significant" part of the press release was an inflammatory rant against PRCs' motives and practices—irrespective of whether they were licensed or not. The press release made derogatory statements about PRCs *in general*, warning of, e.g., "deceptive and coercive tactics," "harmful practices," "fake clinics," "dangerous facilities," "inaccurate and misleading information," and "pressure," even though no patient complaints had been filed against them. App. 85-86. The court failed to reasonably infer from the inflammatory nature of most of the wording of these

---

[14] *Anti-Abortion Centers (AACs)*, Office of the Attorney General, https://www.mass.gov/info-details/anti-abortion-centers-aacs (last visited June 8, 2026). This is an obvious biased assessment of PRCs like YOM which exist not to *prevent* women from accessing abortion, but to give them resources which enable them to *freely choose* life.

communications that the Defendants intended to suppress the activities of PRCs, licensed or not.

Additional evidence of this intent is found in the DPH press release *Maintaining Integrity, Accessibility, and Transparency in Reproductive Care*, App. 122-24, which contained a link to Defendant Goldstein's "Reminder to Licensees Regarding Obligations and Providing Standard of Care." App. 125-30. The opinion analyzed both documents separately without discussing the fact that their simultaneous release and linking established that the purpose of Goldstein's Guidance was indeed to "put anti-abortion centers on notice,"—*as an internal document explicitly admitted*. AOB 32.[15] The court's analysis contradicted *Vullo,* which requires courts to consider well-pled allegations as a whole, and not in isolation. 602 U.S. at 194-95. Ignoring these obvious connections, the court inexplicably stated, "the guidance did not mention or refer to YOM or PRCs at all." Add. 23. A few short months after the Guidance was issued, Defendants embarked upon their "Avoid Anti-Abortion Centers" campaign that criticized "AACs," *licensed or not.* App. 100-12, 114-21, 131-71.

---

[15] *See also,* App. 294 (memo to Defendant Goldstein "RE: For EHS review by December 4: *Anti-abortion center package (licensure guidance*, comms strategy) (emphasis added); App. 299-303 (December 5, 2023 memo from Defendant Goldstein to Defendant Healey "Re: *Guidance Clarifying Licensure Requirements for Anti-Abortion Center Operation* and Care Delivery") (emphasis added).

Because the court here did not construe all the facts and inferences in the context of Defendants' actions as a whole and in favor of YOM, it failed to perceive the licensing issue as a pretense for targeting pro-life PRCs. Its claim that abortion clinics are not proper comparators because most of them are licensed, while most PRCs are not, fails to explain Defendants' lumping together of all PRCs for condemnation, as well as its actions toward YOM, the plaintiff here.

## B. Defendants, throughout their anti-AAC campaign, identified abortion clinics as the proper comparator.

As noted above, the proper inquiry in this Equal Protection case is whether, apart from providing abortions (the basis for the discrimination alleged by YOM), PRCs and abortion clinics are sufficiently similar in "relevant aspects" so as to be considered fair comparators. *Tapalian,* 377 F.3d at 6. Here, the Defendants themselves have demonstrated that abortion clinics are a proper comparator. Throughout their campaign, they consistently compared PRCs' "limited" offering of health care services (i.e. not abortion) to abortion clinics' supposedly "comprehensive" care (i.e. providing abortion). This comparison is natural because both PRCs and abortion clinics seek to serve the needs of women facing unplanned pregnancies in challenging circumstances. The state's entire AAC campaign is addressed to the potential clientele of both PRCs and abortion clinics: pregnant women.

The campaign materials urge women not to go to "AACs" and instead to seek out abortion clinics. App. 85 ("Crisis pregnancy centers do not provide comprehensive reproductive healthcare, rather they are organizations that seek to prevent people from accessing abortion care. If you are pregnant and looking to understand your abortion options, you should consult with a licensed reproductive healthcare provider."); App. 133 ("Avoid Anti-Abortion Centers. . . . They may mislead you about your options if you're pregnant and can put your health at risk. . . . Find reproductive health care, including abortion care, you can trust"); App. 264 (Campaign "Overall Goal: to increase awareness of Anti-abortion Centers (AACs) so that people who are pregnant or may become pregnant can avoid their deceptive practices and associated dangers, instead accessing comprehensive, unbiased sexual and reproductive health care."). One of the main purposes of the campaign, therefore, was to steer pregnant women, i.e. potential clients of both places, away from PRCs and toward abortion clinics.

Defendants themselves have juxtaposed PRCs with abortion clinics, indicating that they view the two groups as comparable—except for their positions on abortion, which is the basis of the discrimination. Once the fig leaves of "limited" services and licensing are removed, the purpose of Defendants' campaign is clear, namely, to crush the abortion industry's opponents—PRCs—by redirecting their common clientele to abortion clinics. The Defendants' own campaign

18

demonstrates that they view abortion clinics as "fair congeners" to PRCs. *Tapalian,* 377 F.3d at 6.

### C. YOM has sufficiently alleged differential treatment.

The court stated that "YOM has not sufficiently alleged that impermissible considerations drove Defendants' decision and actions." Add. 56. On the contrary, YOM alleged a great deal of discriminatory action arising from their bad faith intent to harm PRCs. *See* Secs. I, II.A-B., *supra*. The court addresses only DPH's investigation of YOM based on REN's complaint, ignoring the selective threats and discriminatory actions that the Defendants engaged in because of YOM's opposition to abortion. App. 57-61, 72-75.

The court claimed that REN's complaint, which led to the DPH investigation, "facially suggested YOM's non-compliance with neutral medical standards," Add. 57, but failed to place the complaint in the overall context of Defendants' one-sided, inflammatory and threatening campaign, in which REN was a participant. REN's complaint had nothing to do with legitimate concerns about regulatory compliance. The state Defendants campaigned against PRCs, while failing to comply with the state's minimal regulatory responsibility to re-inspect an abortion clinic that had failed its inspection in 2018, clearly engaging in disparate treatment. AOB 49.

Defendant REN's complaint against YOM involved only a technical regulatory infraction. However, it provided the justification for the State's burdensome and searching investigation of YOM, which resulted in the resignation of one of YOM's physicians. App. 59-60, 66. "[A] government official cannot do indirectly what she is barred from doing directly: A government official cannot coerce a private party to punish or suppress disfavored speech on her behalf." *Vullo,* 602 U.S. at 190. Defendants' campaign against PRCs in essence coerced the doctor to leave YOM in the same way that New York Insurance Commissioner Vullo's threats to insurance companies made them disassociate themselves from the NRA. *Id*. at 191-94.

To take another instance, defendants DPH has continued to investigate YOM's medical director for over two years on pretextual concerns stemming from REN's purely technical complaint. AOB 9.[16] Meanwhile, though abortion provider Women's Health Services failed its inspection in 2018, App. 304-341, DPH, through the Massachusetts Board of Registration in Medicine ("BORIM"), has never disciplined that clinic's medical director, Dr. Laurent Delli-Bovi, as a

---

[16] The lower court dismissed as insignificant the investigation of YOM's medical director because, it asserts, BORIM is not a party to the action and had a statutory mandate to investigate complaints about any physician. Add. 8-9. However, BORIM is part of DPH, and REN's complaint was pretextual. *Our bureaus and offices*, Department of Public Health, https://www.mass.gov/orgs/department-of-public-health (last visited June 8, 2026).

consequence of this substantive failure to properly operate the clinic.[17] Information pertaining to open investigations or ones that close without any disciplinary action against a licensee are not publicly available on BORIM's licensee profile.[18] Given the unequal treatment in the Defendants' campaign against PRCs and DPH's laxity in failing to re-inspect one abortion clinic, the court should have made the reasonable inference that it was plausible that the state had not vigorously investigated complaints against abortion clinics and their inspection failures. The court should have denied the motions to dismiss to give YOM the opportunity to do discovery on this issue. *Rodi,* 389 F.3d at 13.

The court also stated that Defendants did not attempt to stifle YOM's speech about APR. Add. 57. This is a staggering claim in light of the fact that DPH's Guidance—issued at the same time as the July 6 press release targeting "AACs"—called APR "unproven, unethical and unsafe," App. 127, and cautioned that medical providers who offer or provide the treatment could be "subject to discipline." *Id*. It is eminently reasonable that a pro-life medical professional

---

[17] *Our Founder and Medical Director, Dr. Laurent Delli-Bovi*, Women's Health Services, https://womenshealthservice.com/about-us/ (last visited June 8, 2026); *Profile of Laurent C. Delli-Bovi*, BORIM, https://findmydoctor.mass.gov/profiles/41986 (last visited June 8, 2026).

[18] *Check a Licensee's Profile – FindMyDoctor.mass.gov and FindMyAcupuncturist.mass.gov*, Executive Office of Health and Human Services, https://www.mass.gov/check-a-licensees-profile-findmydoctormassgov-and-findmyacupuncturistmassgov (last visited June 8, 2026).

would infer that even telling patients that APR could save their baby could put them in the crosshairs of DPH, which has regulatory authority over licensees. *Id.; First Choice,* 224 L. Ed. 2d at 687 (finding that attorney general's warnings that failure to comply with a subpoena could result in penalties would induce "an objectively reasonable recipient . . . to trim its protected advocacy knowing it now stands in the government's crosshairs").

The court also refused to see any "bad faith or a malicious intent to injure," in the Defendants' coordinated actions, Add. 57, because it failed to consider the fact that—prior to the launch of Defendants' vicious campaign against PRCs— *there were no patient complaints against the "approximately thirty PRCs in Massachusetts,"* (Add. 5; App. 25). And none were filed within the first seven months of the campaign, despite Defendants' repeated solicitations. App. 53. *Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp.,* 246 F.3d 1, 15-16 (1st Cir. 2001) (government conduct implicates Equal Protection if it is "based on . . . malicious or *bad faith* intent to injure a person). There was one patient lawsuit against a different PRC, not YOM, meaning that only three percent (one out of thirty) of PRCs received a patient complaint in any form. App. 49.

Since PRCs outnumber abortion clinics "3 to 1," App. 85, that means there are roughly ten abortion clinics in Massachusetts. Three of them (30%) *failed their inspections* in the seven years preceding the filing of the Amended Complaint.

App. 50. Eight complaints were filed against abortion clinics between 2022 and 2024—including allegations of deceptive advertising and unhealthy and dangerous practices, *things that Defendants accused PRCs of without evidence*. If all the complaints were against one clinic, that means that 12.5% (one out of eight) of abortion clinics have received complaints, as compared to only 3% of PRCs. If the complaints were against eight separate clinics, that means that 80% (eight out of ten) of abortion clinics have received patient complaints, as compared to 3% of PRCs.

The district court's treatment of these facts about the number of complaints and failed inspections among abortion providers in Massachusetts perfectly encapsulates its erroneous approach to YOM's equal protection claim. In a lengthy footnote, it first asserts that "[a] plaintiff must do more than advance the conclusory allegation that someone else did not receive the same scrutiny." Add. 57, n. 23. But YOM did allege more. As detailed in the Amended Complaint, Defendants, without a single patient complaint in hand, launched a public smear campaign warning women away from "dangerous" "anti-abortion centers" but not from abortion centers, against which numerous patient complaints had been filed indicating they *actually were* "dangerous." App. 50, 53. The district court brushed aside YOM's allegations about the abortion clinic that had not been inspected since 2018, ignoring that the clinic *failed its inspection* in 2018. App. 50. But a single

complaint by pro-abortion advocacy group led not only to an investigation against YOM but to a prolonged, ongoing investigation of YOM's medical director. App. 27.

On a motion to dismiss, a court asks "only whether the complaint's factual allegations, if taken as true, state a claim to relief that is plausible on its face. "A complaint that satisfies this standard is well-pleaded and may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (simplified). Rather than judging the Amended Complaint by this standard, the "savvy" district court here repeatedly put forward the Defendants' case for them, focusing on pinpointed allegations one at a time, ignoring the larger picture.

This is the larger picture: if the Defendants were truly concerned about consumer safety and deceptive practices, they would have launched a campaign that addressed issues with these actually deceptive and dangerous clinics. Instead, Defendants launched a politically motivated attack on "anti-abortion centers," despite the dearth of evidence showing that these centers were problematic. "Such '[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Becerra*, 585 U.S. at 774 (citation omitted).

One entirely plausible explanation for Defendants' attacks on PRCs is that Defendants are motivated by deeply rooted and unyielding political and ideological support for abortion and a corresponding animus toward pro-life beliefs and advocacy -- and they have the political power to act on that animus. Defendants' statements and actions are entirely consistent with a "bad faith" motive to harm PRCs in general and YOM in particular. *Barrington Cove*, 246 F.3d at 15-16. They are using the levers of government power to steer women away from giving birth and toward abortion. In furtherance of that goal, they seek to unconstitutionally bury the opposing viewpoint expressed by YOM with burdensome investigations and media campaigns spreading spurious accusations.

The allegations of discriminatory treatment in the Amended Complaint are sufficient to allow YOM the opportunity to prove its claim that the Defendants violated its right to equal protection of the laws.

**CONCLUSION**

In the context of a motion to dismiss where the court should "draw the facts from the complaint and its attachments, taking the well-pleaded facts as true and construing all reasonable inferences in [the opposing party's] favor," *Doe v. City of Boston*, 145 F.4th 142, 146 (1st Cir. 2025) (simplified), the court erred in granting Defendants' motions. Viewed in the context of the entire smear campaign against

25

PRCs, both public and private, Defendants' actions are quite plausibly discriminatory and taken in bad faith.

The District Court's order granting Defendants' motion to dismiss should be reversed.

Respectfully submitted, June 8, 2026

CATHERINE W. SHORT
 *Counsel of Record*
SHEILA A. GREEN
Life Legal Defense Foundation
P.O. Box 1313
Ojai, CA 93024-1313
(707) 337-6880
kshort@lifelegal.org
        Counsel to *Amici Curiae*

**RULE 32 (g) CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the length limitation of Fed. R. App. P. 29(a)(5), the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief was prepared using a proportionally spaced typeface (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5427 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 365) used to prepare this brief.

 /s/ Catherine W. Short

**PROOF OF SERVICE**

I am over 18 years of age and not a party to this action. My business address is P. O. Box 1313, Ojai, California 93024-1313. On June 8, 2026, I caused to be served the following documents:

**Proposed Brief of _Amicus Curiae_ Life Legal Defense Foundation in Support of Plaintiff-Appellant and REVERSAL**

on the Defendants-Appellees via the Court's CM/ECF system and that a copy will be sent via the CM/ECF system electronically to all counsel of record. In addition, a copy was sent via electronic mail to all counsel of record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 8, 2026                                    /s/ Catherine W. Short