No. 26-1264

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————

A WOMAN'S CONCERN INC., D/B/A YOUR OPTIONS MEDICAL CENTERS,

*Plaintiff-Appellant*,

*v.*

MAURA T. HEALEY, GOVERNOR OF MASSACHUSETTS, sued
in her individual and official capacities; ROBERT GOLDSTEIN,
COMMISSIONER OF THE MASSACHUSETTS DEPARTMENT
OF PUBLIC HEALTH, sued in his individual and official capacities;
REPRODUCTIVE EQUITY NOW FOUNDATION, INC.;
REBECCA HART HOLDER, EXECUTIVE DIRECTOR OF
REPRODUCTIVE EQUITY NOW FOUNDATION, INC.,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court for the District of Massachusetts
in Case No. 1:24 -cv-12131, Judge Leo T. Sorokin

———————————

**BRIEF OF DEFENDANTS-APPELLEES REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART HOLDER**

———————————

MARTIN FANTOZZI
MARIANA KORSUNSKY
CARLA A. REEVES
SARAH EBERSPACHER
KATHLEEN RITTER
KIMAN KAUR
GOULSTON & STORRS PC
One Post Office Square, 25th Floor, Boston, MA 02109
(617) 482-1776

*Attorneys for Defendants-Appellees
Reproductive Equity Now Foundation, Inc. and Rebecca Hart Holder*

1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Reproductive Equity Now Foundation, Inc., a non-governmental corporate party to the above-captioned proceeding, does not have any parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................10

JURISDICTIONAL COUNTERSTATEMENT ....................................................11

COUNTERSTATEMENT OF ISSUES PRESENTED..........................................12

STATEMENT OF THE CASE...............................................................................12

I.      FACTS RELEVANT TO REN AND HOLDER ........................................12

      A.     REN's and Holder's Viewpoint and Speech Concerning Anti-Abortion Centers ................................................................................12

      B.     REN's Complaint to the Massachusetts Department of Public Health ................................................................................................14

      C.     REN Provides Support to a Massachusetts Public Education Campaign.........................................................................................17

II.     PROCEDURAL HISTORY AND DISMISSAL WITH PREJUDICE.........17

SUMMARY OF THE ARGUMENT .....................................................................19

STANDARD OF REVIEW ...................................................................................21

ARGUMENT .........................................................................................................22

I.      YOM FAILED TO ESTABLISH ARTICLE III STANDING AGAINST REN OR HOLDER.....................................................................22

II.     YOM FAILED TO PLAUSIBLY ALLEGE THAT REN AND HOLDER ARE STATE ACTORS SUBJECT TO LIABILITY UNDER 42 U.S.C. § 1983.......................................................................28

      A.     REN's Work as an Independent Consultant to MORE for the Public Education Campaign Does Not Transform REN and Holder into State Actors ....................................................................32

      B.     REN's Receipt of Funding and Other Support from the State Did Not Transform REN and Holder into State Actors .....................34

C.     REN and Holder's Filing of the DPH Complaint Was Not State Action and Cannot, as a Matter of Law, Support Liability Under 42 U.S.C. § 1983 ....................................................................35

      i.     YOM's characterization of the DPH Complaint is inconsistent with the concessions it made to the District Court....................................................................36

      ii.     YOM's characterization of the DPH Complaint is contradicted by YOM's own exhibits.........................................37

      iii.     The filing of the DPH Complaint was protected petitioning activity. ...............................................................38

D.     REN's and Holder's Speech and Advocacy Are Not State Action ...................................................................42

III.     YOM FAILED TO PLAUSIBLY ALLEGE THAT REN OR HOLDER CAUSED A DEPRIVATION OF YOM'S CONSTITUTIONAL RIGHTS ....................................................43

CONCLUSION.....................................................................46

CERTIFICATE OF COMPLIANCE..................................................47

CERTIFICATE OF SERVICE .......................................................48

# TABLE OF AUTHORITIES

*CASES*

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
    732 F.3d 77 (1st Cir. 2013)................................................................21

*Andresen v. Diorio*,
    349 F.3d 8 (1st Cir. 2003)................................................................41

*Arturet-Vélez v. R.J. Reynolds Tobacco Co.*,
    429 F.3d 10 (1st Cir. 2005)................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................21

*Barrios-Velazquez v. Asociación de Empleados del Estado Libre
    Asociado de P.R.*, 84 F.3d 487 (1st Cir. 1996)................................................42

*Bayou Fleet, Inc. v. Alexander*,
    234 F.3d 852 (5th Cir. 2000) ................................................................39

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................21

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)................................................................ 30, 34

*Blythe v. Schlievert*,
    245 F. Supp. 3d 959 (N.D. Ohio 2017) ................................................31

*Burns v. City of Worcester*,
    772 F. Supp. 3d 109 (D. Mass. 2025)................................................26

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)................................................................40

*Canales v. Gatzunis*,
    979 F. Supp. 2d 164 (D. Mass. 2013)................................................25

*Cheng v. Neumann*,
    51 F.4th 438 (1st Cir. 2022) ................................................ 22, 32. 37

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) ................................................................43

*Citizens to End Suffering and Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65 (D. Mass. 1990) ....................................29

*Conrad v. Perales*,
818 F. Supp. 559 (W.D.N.Y. 1993).................................................................31

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
958 F.3d 38 (1st Cir. 2020)................................................................ *passim*

*Davric Maine Corp. v. Rancourt*,
216 F.3d 143 (1st Cir. 2000)......................................................... 38, 41, 41

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*,
412 F.3d 1 (1st Cir. 2005)......................................... 28, 29, 31, 45

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990)........................................................................................23

*Gagliardi v. Sullivan*,
513 F.3d 301 (1st Cir. 2008)........................................................................33

*Gonzalez-Morales v. Hernandez-Arencibia*,
221 F.3d 45 (1st Cir. 2000)...........................................................................22

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016)........................................................................23

*In re Montreal, Maine & Atl. Ry., Ltd.*,
888 F.3d 1 (1st Cir. 2018)............................................................................22

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012)...........................................................................25

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) .......................................................................38

*Klunder v. Brown Univ.*,
778 F.3d 24 (1st Cir. 2015)...........................................................................28

*Laird v. Tatum*,
408 U.S. 1 (1972)............................................................................................27

*Lipscomb v. Ressijac*,
No. CV 16-40145-LTS, 2016 WL 11978615 (D. Mass. Nov. 2, 2016) .............................................................................................................26

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982)...................................................................................42

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...................................................................................23

*Morales-Cruz v. University of P.R.*,
    676 F.3d 220 (1st Cir. 2012)....................................................................21

*Murthy v. Missouri*,
    603 U.S. 43 (2024)........................................................................... 23, 25

*National Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024)...................................................................................44

*New W., L.P. v. City of Joliet*,
    491 F.3d 717 (7th Cir. 2007) ...................................................................38

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022)...................................................31

*Pasdon v. City of Peabody*,
    417 F.3d 225 (1st Cir. 2005).....................................................................26

*Perkins v. Londonderry Basketball Club*,
    196 F.3d 13 (1st Cir. 1999)................................................................ 29, 38

*Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance*
    *Corp.*, 632 F.3d 762 (1st Cir. 2011) ................................................. 23, 25

*Ponce v. Basketball Fed'n of Com. of P.R.*,
    760 F.2d 375 (1st Cir. 1985).....................................................................28

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)........................................................................... 41, 41

*Rae v. Woburn Public Schs.*,
    113 F.4th 86 (1st Cir. 2024) .....................................................................30

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)......................................................................... 32, 34

*Richards v. City of Lowell*,
    472 F. Supp. 2d 51 (D. Mass. 2007).......................................................28

*Rockwell v. Cape Cod Hosp.*,
    26 F.3d 254 (1st Cir. 1994).......................................................................34

*Rodriguez-Cirilo v. Garcia*,
115 F.3d 50 (1st Cir. 1997)......................................................................43

*S.E.C. v. Tambone*,
597 F.3d 436 (1st Cir. 2010).....................................................................21

*Sanchez v. Pereira-Castillo*,
590 F.3d 31 (1st Cir. 2009).......................................................................28

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012).......................................................................45

*Sea Shore Corp. v. Sullivan*,
158 F.3d 51 (1st Cir. 1998).......................................................................23

*Shay v. Walters*,
702 F.3d 76 (1st Cir. 2012).......................................................................21

*Siegert v. Gilley*,
500 U.S. 226 (1991).................................................................................26

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................ 23, 24, 26

*VDARE Found. v. City of Colo. Springs*,
11 F.4th 1151 (10th Cir. 2021).................................................................34

*Verlus v. Experian Info. Sols., Inc.*,
No. 23-CV-11426-DJC, 2025 WL 836588 (D. Mass. Mar. 17,
2025) ........................................................................................................26

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023) .................................................. 23, 24, 27

*Wojcik v. Mass. State Lottery Comm'n*,
300 F.3d 92 (1st Cir. 2002).......................................................................26

*Yeo v. Town of Lexington*,
131 F.3d 241 (1st Cir. 1997)......................................................................43

**STATUTES**

Mass. Gen. Laws ch. 13, §10.......................................................................16

42 U.S.C. § 1983 ............................................................................ *passim*

***FEDERAL RULES***

Fed. R. Civ. P. 12(b)(1)..................................................................................................20

Fed. R. Civ. P. 12(b)(6)..................................................................................................23

## INTRODUCTION

This appeal concerns, in part, whether Defendants-Appellees Reproductive Equity Now Foundation, Inc. ("REN"), a private reproductive justice advocacy organization, and its former President, Rebecca Hart Holder ("Holder" and, together with REN, the "REN Appellees"), may be held liable under 42 U.S.C. § 1983 ("Section 1983") (i) for exercising their First Amendment rights to criticize anti-abortion centers ("AACs") for impeding individuals' access to the full spectrum of reproductive health care, and (ii) for assisting the Commonwealth in a public education campaign concerning AACs. As the District Court correctly determined, the answer is no.

Plaintiff-Appellant A Woman's Concern, Inc., d/b/a Your Options Medical Centers ("YOM"), contends that Governor Maura Healey, Department of Public Health Commissioner ("DPH") Robert Goldstein, REN, and Holder "engaged in a coordinated campaign of coercion against" it in violation of the First and Fourteenth Amendments. Opening Brief of Plaintiff-Appellant ("Opening Br.") at 2. Yet, YOM's Amended Complaint, which is replete with conclusory allegations and gross mischaracterizations that do not comply with the rules of pleading, fails to state actionable claims that any of the Defendants-Appellees targeted YOM for actual or threatened enforcement action or impeded YOM's exercise of protected speech or

religious practices. The District Court properly dismissed YOM's claims, accordingly.

As they concern REN and Holder specifically, the claims asserted in the Amended Complaint fail for three independent reasons. *First*, YOM failed to satisfy its burden of demonstrating that it has sustained any legally cognizable injury under Section 1983 that is fairly traceable to the conduct of REN or Holder, as required under Article III, Section 2 of the Constitution. *Second*, YOM did not—and cannot—plausibly allege, as it must, that REN or Holder acted under color of state law. *Third and finally*, YOM failed to plausibly allege that REN or Holder deprived YOM of its First Amendment rights to free speech and free exercise of religion or its right to equal protection of the laws under the Fourteenth Amendment.

For these reasons, as further addressed below, the District Court correctly dismissed YOM's claims against REN and Holder. This Court should affirm.

## JURISDICTIONAL COUNTERSTATEMENT

YOM does not satisfy the jurisdictional requirements of Article III, Section 2 of the Constitution with respect to REN and Holder because it has not pleaded an injury in fact that is fairly traceable to either REN's or Holder's conduct.

**COUNTERSTATEMENT OF ISSUES PRESENTED**

1. Whether YOM has standing to maintain its claims against REN and Holder, where YOM failed to allege an injury in fact that is fairly traceable to either REN's or Holder's conduct.

2. Whether YOM's Amended Complaint fails to plausibly allege that private parties REN and Holder are state actors subject to liability under Section 1983.

3. Whether the District Court correctly held that YOM was not deprived of any constitutional rights by REN and Holder.

**STATEMENT OF THE CASE**

**I. FACTS RELEVANT TO REN AND HOLDER**

**A. REN's and Holder's Viewpoint and Speech Concerning Anti-Abortion Centers**

REN is a Massachusetts nonprofit organization dedicated to furthering access for all people to the full spectrum of reproductive health care. App.21, 93. Advancing reproductive justice and eliminating barriers to safe and legal abortion care are central to REN's mission. App.21. During the relevant time period, Holder was the President of REN and worked to advance REN's mission. *Id.*; App.148.

To further REN's mission, REN and Holder publicly advocated that AACs, many of which are not licensed health care facilities, "pose a serious threat to

12

pregnant people seeking unbiased reproductive health care in Massachusetts."[1] App.37. They also publicly contended that AACs "use deceptive practices to attract patients . . . [and] use disinformation as a way to dissuade people from accessing abortion care." App.36.

As part of its public advocacy, REN developed and published materials expressing its views about AACs. App.35–36, 142–71. REN's website states that AACs "are facilities that present themselves as resources for people facing unplanned pregnancies, but in reality, exist to dissuade people from accessing abortion care." App.142. The website includes a link to a guidebook reflecting REN's research and views about AACs. App.35, 147–71; Add.13. Among other things, REN's website and its guidebook emphasize the concern that AACs can dissuade people from accessing abortion care, such as by burying a disclosure that the AAC does not provide abortion care or referrals deep in its website, "counseling" a pregnant person by engaging in lengthy discussions about fetal development or pressuring the individual to choose parenthood or adoption, and by falsely claiming that abortion is linked to infertility, breast cancer, depression, and mental health

---

[1] YOM refers to AACs as "pro-life pregnancy centers" (App.25–28, 31, 33, 35, 38, 41, 53, 57–59),"pro-life pregnancy resource centers" (App.18–19, 53, 71, 74), "pregnancy resource centers" (App.39, 41, 43, 48–50, 54–55), "pro-life centers" (App.25, 31, 34–37, 49, 51, 58–59), "pro-life clinics" (App.30–31), and "pro-life organizations" (App.23–24, 36).

problems. App.36, 142–71.

REN's website and its guidebook provide individuals with information about how to access legal representation or file a complaint if they believe they have been "harmed by deceptive practices, harassment, or medical malpractice" at an AAC. App.145; Add.13. The website and guidebook refer to a free, confidential "Abortion Legal Hotline" for people to report their experiences with AACs, receive referrals to pro bono legal counsel, and help access lawful abortion care (the "Hotline"). App.36, 157, 161; Add.13. The Hotline is managed and staffed by REN, which received financial support to maintain the Hotline from Massachusetts in a supplement to the fiscal year 2023 budget passed by the Massachusetts legislature and signed by Governor Maura Healey on March 29, 2023. App.34–36, 38.

### B. REN's Complaint to the Massachusetts Department of Public Health

In August 2023, the *Provincetown Independent* reported that YOM was planning to operate a mobile clinic on Cape Cod, which YOM was promoting as offering free pregnancy testing and ultrasounds with "immediate results." App.26, 93–99. The article quoted YOM's Executive Director, Teresa Larkin, as stating that "when we say immediate results, we usually mean preliminary findings." App.26, 93. Larkin added that YOM did not plan for a "registered" obstetrician or radiologist to be present in the mobile clinic and that ultrasound images taken in the mobile unit would be sent digitally to a physician, with results to be reviewed within 24 to 48

hours. App.94.

REN and Holder were concerned about the inconsistency between YOM's advertising that the results would be "immediate" and Larkin's statements that results would in fact be "preliminary findings" requiring review and confirmation by an offsite physician within 24 to 48 hours. App.26, 93–99. As a consequence, on October 17, 2023, REN and Holder submitted a complaint to DPH, copying several other government and licensing entities (the "DPH Complaint"). *See* App.93–99. The DPH Complaint states in relevant part:

> The advertisement on the mobile unit and Ms. Larkin's statements raise two important issues. First, Ms. Larkin's statements suggest that [YOM's] mobile unit may be falsely advertising "immediate results." Second, if [YOM's] mobile unit is offering "immediate results" following an ultrasound, we have serious concerns that clinicians may be operating beyond their scope of practice . . . .
>
> Without a physician available to immediately interpret an ultrasound and provide "immediate results," we are concerned that registered nurses could be operating outside of their scope of practice by diagnosing ultrasounds immediately . . . .
>
> [W]e are alarmed by reporting indicating their plan to make only registered nurses and volunteers available at appointments, while simultaneously advertising "immediate results," which could set up a scenario for out-of-scope practice and patient endangerment.

App.93–95. REN and Holder urged DPH to investigate whether YOM "***may be engaging*** in deceptive practices and ***potentially endorsing*** out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." App.93 (emphasis added). YOM admits that after it received the DPH Complaint, DPH

required YOM to amend its "Policies and Procedures Manual concerning the criteria for ultrasound exams, eliminating any language that allowed for sonographer discretion," which YOM did. App.26–27. YOM also alleges that DPH subsequently found YOM in compliance with its state licensing requirements as of February 29, 2024. App.27.

Separately, the Massachusetts Board of Registration in Medicine ("BORIM"),[2] which was copied on the DPH Complaint, began an investigation of YOM's medical director in response to the DPH Complaint, serving two subpoenas on YOM, on December 21, 2023 and on June 5, 2024. App.27. On July 9, 2024, YOM filed an action in Middlesex County Superior Court in the Commonwealth of Massachusetts seeking to enjoin BORIM's investigation and claiming (as it does in this case) that the DPH Complaint lacked merit and was initiated "to conduct a vast fishing expedition and to pry into the business of" YOM. App.28, 402–14. The Superior Court denied YOM's request for a preliminary injunction, holding that BORIM had authority to conduct the investigation. App.402–04, 415–18.

---

[2] BORIM, an independent board whose members are appointed by the governor, regulates and oversees individual physicians. *See generally* App.125–30; Mass. Gen. Laws ch. 13, § 10 (West 2025).

### C. REN Provides Support to a Massachusetts Public Education Campaign

On June 10, 2024, the Healey-Driscoll Administration and DPH developed and launched the Public Education Campaign to address the public health risks posed by AACs. App.31–33. DPH engaged Causemedia, Inc. d/b/a MORE Advertising ("MORE"), as a consultant to develop the Public Education Campaign, and MORE, in turn, engaged REN as an independent consultant with respect to the Campaign on August 8, 2023. App.37–39, 402–04, 419–24. The Public Education Campaign was funded through a $1 million supplemental appropriation in the Massachusetts budget that was passed by the Massachusetts legislature in March 2023. App.32, 38, 173–76. The Public Education Campaign, which does not mention YOM by name, includes factsheets, public postcards, billboards, and advertisements on social media, transit, and radio platforms (App.32–34, 45, 131–41, 284–86) with messages such as "Avoid Anti-Abortion Centers," including a link and QR code telling readers they can "find out why" by clicking the links. App.131. DPH's website provides more information and includes a link to a website maintained exclusively by REN. App.34. YOM does not allege that it is named on DPH's website or in the advertisements that are part of the Public Education Campaign.

## II. PROCEDURAL HISTORY AND DISMISSAL WITH PREJUDICE

On August 19, 2024, YOM filed its initial Complaint against the State Appellees, REN, and Holder, in her capacity as President of REN. App.5. The State

Appellees and the REN Appellees separately moved to dismiss the Complaint. App.8–9. After hearing oral argument on May 5, 2025, the District Court terminated all then-pending motions to dismiss as moot and allowed YOM's motion to amend its Complaint. App.10–11. On June 20, 2025, YOM filed its Amended Complaint against the State Appellees and the REN Appellees, adding 163 paragraphs and 27 exhibits. App.11, 18–77.

Like the initial Complaint, the Amended Complaint alleged violations of YOM's constitutional rights under the First (Counts I and II) and Fourteenth (Count III) Amendments. YOM alleged that REN and Holder acted under "color of state law" with respect to each count, such that YOM's constitutional claims could be maintained against them under Section 1983. App.61, 68–69, 72–73. The State Appellees and the REN Appellees again separately moved to dismiss the Amended Complaint, and the District Court heard oral argument on January 29, 2026. App.12–13. During the hearing, YOM conceded that, at most, REN and Holder acted under color of law only with respect to the Public Education Campaign. App.563–64 ("The Court: [W]hat would be the scope of what [REN and Holder] are a state actor for? . . . Ms. Summers: [T]he media campaign."); App.564 ("The Court: [T]hey're not a state actor for purposes of regulating doctors or licensees? Ms. Summers: No."); Add.58 ("YOM conceded that . . . [REN and Holder], at most, acted under color of law only with respect to the state's media campaign, but not with respect to the

18

exercise of any state regulatory authority.").

On February 17, 2026, the District Court entered an Order on Motions to Dismiss, granting both motions and entering a judgment of dismissal. Add.59–60. The District Court found that YOM failed to state a plausible claim under the First and Fourteenth Amendments against either the State Appellees or the REN Appellees. Add.1–59. The District Court did not determine whether YOM established standing with respect to its claims against REN or Holder. The District Court also did not determine whether REN or Holder were state actors for purposes of liability under Section 1983. Add.58 ("Because the [District] Court dismisses all three counts for failure to state a claim on the merits, [it] declines to address . . . whether Defendants REN and Holder acted under color of law.").

On March 16, 2026, YOM filed a Notice of Appeal of the District Court's Order dismissing its claims (App.15–17) and submitted its opening brief to this Court on June 1, 2026. Opening Br., Entry ID No. 6814049 (Jun. 1, 2026). The REN Appellees requested, and the Court granted, a 30-day extension to file their brief on or before July 31, 2026. Corrected Order of Court, Entry ID No. 6819438 (Jun. 18, 2026).

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's dismissal of YOM's claims against REN and Holder for three independent reasons.

*First*, YOM does not have standing to pursue its claims against REN and Holder. Despite the opportunity to cure its pleadings, YOM failed to satisfy its burden of demonstrating that it sustained any legally cognizable injury under Section 1983 fairly traceable to either REN's or Holder's conduct. Accordingly, all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See infra* Section I.

*Second*, as private parties, neither REN nor Holder are subject to Section 1983 liability because they have not acted under color of law. *See infra* Section II. Liability under Section 1983 cannot be predicated on REN and Holder's exercise of their First Amendment petitioning rights under the *Noerr-Pennington* doctrine, and YOM has failed to allege facts plausibly demonstrating that this is one of the rare instances in which private conduct can transform into state action. *See infra* Section II(C).

*Third*, YOM has failed to allege how either REN or Holder deprived it of any constitutional rights, including its First Amendment rights to free speech and free exercise of religion or its equal protection of the laws under the Fourteenth Amendment. Where there is no state action and no deprivation of constitutional rights, this Court should affirm the dismissal of claims against REN and Holder for failure to state a claim. *See infra* Section III.

## STANDARD OF REVIEW

The District Court's dismissal of the Amended Complaint is subject to *de novo* review. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). Under *de novo* review, the Court must accept all well-pleaded factual allegations in the Amended Complaint as true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

This Court has explained that it reviews dismissals for failure to state a claim using a two-step analysis. First, the Court must "strip away and discard the complaint's conclusory legal allegations." *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012). Second, "the court must determine whether the remaining facts allow it 'to draw [a] reasonable inference that the defendant is liable for the misconduct alleged.'" *Morales-Cruz v. University of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 555). Thus, the Court may affirm dismissal of the Amended Complaint for failure to state a claim against REN and Holder "if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on

21

any viable theory." *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 49 (1st Cir. 2000) (citation omitted).

The Court may consider facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the plaintiff's response to the motion to dismiss. *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) (citations omitted). Where there is a contradiction between the complaint and the exhibits on which it relies, the exhibits supersede the allegations. *Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted). Finally, the Court may affirm the dismissal on any legal ground supported by the record, even if the District Court did not rely on that ground. *In re Montreal, Maine & Atl. Ry., Ltd.*, 888 F.3d 1, 8 n.4 (1st Cir. 2018) (citations omitted).

## ARGUMENT

### I. YOM FAILED TO ESTABLISH ARTICLE III STANDING AGAINST REN OR HOLDER

Article III, Section 2 of the Constitution limits federal jurisdiction to "actual cases or controversies." *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (citations omitted).[3] To satisfy that requirement,

---

[3] Although the District Court did not analyze standing, this Court has "an independent obligation to examine [its] own jurisdiction" over YOM's claims

YOM must establish standing for ***each claim*** asserted against ***each named defendant***. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *see Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 n.6 (1st Cir. 2011) (citations omitted).

Both the Supreme Court and this Court have made clear that to establish federal jurisdiction, YOM must, at the "irreducible constitutional minimum," demonstrate for each claim and each defendant: (1) an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 55 (1st Cir. 1998). At the pleading stage, this Court, "like the majority of [its] sister circuits," applies "the plausibility standard applicable under Rule 12(b)(6)." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730–31 (1st Cir. 2016) (collecting cases).

Under the 12(b)(6) standard, YOM must allege tangible or intangible injuries that are concrete, particularized, and actual or imminent, along with a sufficiently direct causal connection to REN's or Holder's challenged conduct. *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 372 (1st Cir. 2023); *Dantzler*, 958 F.3d at 46.

---

against REN and Holder. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted).

A risk of future harm confers standing only if it "is sufficiently imminent and substantial" and must nonetheless be attributable to the conduct of REN or Holder. *Webb*, 72 F.4th at 375 (quoting *TransUnion*, 594 U.S. at 435); *see Dantzler*, 958 F.3d at 47 (recognizing that causation cannot be "overly attenuated" and "is absent if the injury stems from the independent action of a third party").

YOM has failed to meet this standard with respect to REN and Holder. YOM alleges that it has suffered harms because one of its doctors quit providing services, which purportedly caused it to turn patients away (App.66); additional security expenses were purportedly incurred (App.67); and YOM's speech and religious exercise have been purportedly chilled (App.67, 71). Although the Amended Complaint is riddled with conclusory allegations that YOM's alleged injuries were caused by the "Defendants" in the aggregate, YOM contends that all of the alleged harms stem from "threats" and fear of government retaliation and enforcement. App.60. These allegations are insufficient to demonstrate that YOM's alleged injuries, even if cognizable, are "fairly traceable" to REN's or Holder's conduct.

Tellingly, the Amended Complaint fails to allege that REN or Holder made any threats of enforcement to or undertook any coercive acts towards YOM. The Amended Complaint also does not so much as attempt to plead how REN or Holder could possibly threaten YOM with enforcement or coerce YOM to forego its First Amendment rights. In fact, during the second motion to dismiss hearing on January

29, 2026, after confirming that YOM's theory of constitutional harm is predicated on the wielding of regulatory or enforcement authority, YOM conceded that REN and Holder cannot regulate doctors or medical licensees—and YOM could not coherently articulate how REN and Holder otherwise exercised any enforcement powers.[4] App.548, 554–55, 563–67.

Further, YOM never alleges—because it cannot—that it refrained from exercising its First Amendment rights due to feared prosecution or other harms by REN or Holder. REN and Holder are private parties without any enforcement or regulatory powers. *See* App.564. YOM cannot satisfy its burden on standing by relying on generalized allegations against "Defendants" collectively without tracing the threats of government enforcement and coercion to REN or Holder. *See Dantzler*, 958 F.3d at 47–48; *Murthy*, 603 U.S. at 44; *Plumbers' Union*, 632 F.3d at 769 n.6; *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 171 (D. Mass. 2013). YOM also cannot rely on the allegations of the State's enforcement powers to establish standing for claims against REN and Holder. *See Katz v. Pershing, LLC*, 672 F.3d 64, 71–72 (1st

---

[4] When asked about the predicate for the constitutional claims against REN and Holder, YOM's counsel claimed that REN invoked the licensure regulation when filing the DPH Complaint concerning YOM. App.567–68. The filing of the DPH Complaint did not and could not imbue REN and Holder with the requisite regulatory authority on which YOM's claims are predicated. At most, the filing of the DPH Complaint constituted REN's and Holder's petitioning of the State's agencies, as REN and Holder are entitled to do under the First Amendment, to exercise *the agencies'* regulatory authority.

Cir. 2012) ("Causation is absent if the injury stems from the independent action of a third party.").

YOM's alleged intangible injuries of "reputational harm" fare no better. App.67. A mere allegation of reputational injury, unsupported by facts identifying what was said, by whom, to whom, and how it injured YOM in a concrete way, is not enough to establish standing under Section 1983. *See TransUnion*, 594 U.S. at 432 (finding reputational harm where plaintiff class members demonstrated "concrete" harm); *Verlus v. Experian Info. Sols., Inc.*, No. 23-CV-11426-DJC, 2025 WL 836588, at *3 (D. Mass. Mar. 17, 2025) (holding that a plaintiff must allege "specific factual allegations sufficient to support a plausible conclusion that he [or she] has suffered a concrete injury of the type similar to that suffered when a defamatory statement is made") (internal quotation marks and citation omitted); *see, e.g.*, *Lipscomb v. Ressijac*, No. CV 16-40145-LTS, 2016 WL 11978615, at *6 (D. Mass. Nov. 2, 2016) (dismissing a due process *Bivens* claim because allegations of "[i]njury to one's reputation, standing alone, is not enough" to state a plausible claim) (citation omitted). To the extent YOM attempts to constitutionalize reputational injury through Section 1983, alleged defamation, alone, is not a federal constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Burns v. City of Worcester*, 772 F. Supp. 3d 109 (D. Mass. 2025) (citing *Pasdon v. City of Peabody*, 417 F.3d 225, 228–29 (1st Cir. 2005) and *Wojcik v. Mass. State Lottery Comm'n*,

300 F.3d 92, 102 (1st Cir. 2002) ("It is beyond cavil that 'defamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights.'")).

The same is true of YOM's allegation that its speech and religious exercise have been "chilled." App.67. A plaintiff asserting violations under the First Amendment must allege more than a subjective or conclusory assertion of deterrence; it must identify an actual chilling of protected activity or a sufficiently imminent threat of concrete future harm. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972); *Webb*, 72 F.4th at 375. YOM does not allege that it stopped speaking, altered any religious practice, refrained from any protected activity, or did so because of conduct by REN or Holder. A conclusory assertion that rights have been "chilled," without facts showing actual censorship or a sufficiently imminent threat traceable to REN or Holder, cannot establish injury in fact or causation.

In short, YOM's standing is premised on injuries allegedly caused by "threats," but the Amended Complaint does not allege that REN or Holder made any such threats. YOM's remaining assertions of reputational harm and chilled constitutional activity are conclusory and unconnected to any conduct by REN or Holder. Because YOM has not plausibly alleged an injury fairly traceable to either REN or Holder, its claims against them should be dismissed for lack of Article III standing.

**II. YOM FAILED TO PLAUSIBLY ALLEGE THAT REN AND HOLDER ARE STATE ACTORS SUBJECT TO LIABILITY UNDER 42 U.S.C. § 1983**

To withstand dismissal of its Section 1983 claims against REN and Holder, YOM must plausibly allege that REN and Holder were each acting under color of state law and caused a deprivation of YOM's constitutional rights through those acts. As REN and Holder are indisputably private parties, YOM's allegations must establish that any actions taken by them in violation of its constitutional rights are "fairly attributable to the State." *Klunder v. Brown Univ.*, 778 F.3d 24, 30–34 (1st Cir. 2015) (citation omitted); *Ponce v. Basketball Fed'n of Com. of P.R.*, 760 F.2d 375, 377 (1st Cir. 1985). As this Court has made clear, "[i]t is '[o]nly in rare circumstances' that private parties can be viewed as state actors." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4–5 (1st Cir. 2005). No such circumstances are present here. *Cf. Sanchez v. Pereira-Castillo*, 590 F.3d 31, 51 (1st Cir. 2009) (plaintiff-inmate adequately alleged that a private doctor was acting under color of state law where he claimed prison officials directed the doctor to conduct exploratory surgery of plaintiff-inmate, and the doctor did so despite evidence that it was unnecessary and without completing further investigation before undertaking surgery); *Richards v. City of Lowell*, 472 F. Supp. 2d 51, 74–77 (D. Mass. 2007) (plaintiff-employee presented sufficient evidence to survive summary judgment on issue of state action, including that defendant Greater Lowell Workforce Investment

Board did not operate separately from the city but was overseen by a board of directors appointed by the city, offered employee benefits provided by the city, used a financial database for which the city controlled employees' access via codes and passwords, and received a "substantial part of [its] operating revenue" from state and federal grant money controlled by the city); *Citizens to End Suffering and Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65, 69 (D. Mass. 1990) (security officers who arrested protesters near Faneuil Hall were state actors under "both a private assumption of a traditionally public function, and a symbiotic relationship between defendant and the City of Boston").

REN and Holder cannot be subject to liability under Section 1983 unless (1) the conduct in which they allegedly engaged was "a public function that [was] 'traditionally the exclusive prerogative of the State;'" (2) the State coerced REN or Holder or provided such significant encouragement to them that their alleged conduct must be deemed to be that of the State; or (3) the State "so far insinuated itself into a position of interdependence" with REN and Holder that it was a joint participant in the challenged activity. *See Estades-Negroni*, 412 F.3d at 4–8; *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 21 (1st Cir. 1999). YOM has not plausibly alleged facts that meet any of these standards.

YOM does not allege that REN and Holder exercised powers exclusively reserved to the State. YOM also does not allege that the State coerced REN or Holder

or provided such significant encouragement to them with respect to the conduct of which YOM complains that the conduct must be legally considered the State's. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982) (state approval of or acquiescence in a private party's initiatives is not enough). Finally, while YOM alleges that REN and Holder acted "in explicit partnership . . . as a joint action with Massachusetts officials" (App.61–62, 69, 72–73) and that "REN and state actors" had "a mutual symbiotic relationship" (App.62), these characterizations are conclusory labels, not well-pleaded factual allegations entitled to a presumption of truth. *See Rae v. Woburn Public Schs.*, 113 F.4th 86, 98 (1st Cir. 2024) (unsupported conclusions need not be accepted as true). YOM has not plausibly alleged facts establishing the joint participation or mutual interdependence necessary to support the application of Section 1983 to REN and Holder.

YOM has conceded that its position is that REN and Holder acted under color of state law, at most, with respect to the Public Education Campaign and not in any exercise of regulatory or enforcement authority. Add.58; App.563–64 ("The Court: [W]hat would be the scope of what [REN and Holder] are a state actor for? . . . Ms. Summers: [T]he media campaign."); App.563–64 ("The Court: But they're not a state actor for purposes of regulating doctors or licensees? Ms. Summers: No."). YOM nevertheless attempts to support its theory of state action by haphazardly linking the services REN performed as an independent consultant to MORE on the

Public Education Campaign, REN's receipt of funding from the State to maintain the Hotline, and REN's and Holder's private petitioning, speech, and advocacy efforts. These separate actions, even taken together, fall well short of establishing the "rare circumstances" in which private parties can be deemed state actors for purposes of Section 1983. *See Estades-Negroni*, 412 F.3d at 4–5.

YOM's repeated invocation of a reference to REN and Holder as the "trusted partner" of the State (App.18, 59, 61, 69, 72) in a manner divorced from its relevant context, does not change this fact.[5] The record contains one sole reference to REN as a "trusted partner" of the State. The statement is buried on one page of the DPH's website, which reads in parentheses: "This map is maintained by Reproductive Equity Now Foundation, a trusted partner of the Massachusetts Department of Public Health." App.432. YOM has taken this one statement and distorted it in a weak

---

[5]      While not binding on this Court, the decisions of federal district courts addressing the characterization of relationships between state actors and private parties are instructive. These courts have consistently recognized that labeling such a relationship as a "partnership" does not establish state action, particularly absent plausible allegations of mutual interdependence. *See, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1182 (N.D. Cal. 2022), *aff'd sub nom*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ("Generalized statements about working together do not demonstrate state action."); *Blythe v. Schlievert*, 245 F. Supp. 3d 959, 968–69 (N.D. Ohio 2017) (a conclusory characterization of a hospital as a "partner" of a state agency was insufficient to adequately plead state action); *Conrad v. Perales*, 818 F. Supp. 559, 564–65 (W.D.N.Y. 1993) (private trade associations' partnership with the State on a joint industry-state task force did not render them state actors).

attempt to establish a state-actor relationship where there is none. Because YOM's allegations contradict and mispresent the record, evidence set forth in the record shall supersede YOM's allegations. *See Cheng*, 51 F.4th at 445 ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted).

### A. REN's Work as an Independent Consultant to MORE for the Public Education Campaign Does Not Transform REN and Holder into State Actors

In an effort to bolster its theory of joint action between REN and Holder and the State, YOM points to REN's work with a "PR firm in shaping and creating the [Public Education Campaign] alongside DPH," and the fact that REN and "government officials" met regularly to coordinate and perform work on the Campaign. App.39–40, 53. Stated differently, YOM points to work that MORE, a private consultant to the State, engaged REN to perform on the Public Education Campaign. However, it is well-established that providing services to the government pursuant to a contract does not transform conduct of a private actor into state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982). This is true even where the private actor has "significant or even total engagement" in performing the contract. *Id.* at 831.

YOM's Amended Complaint does not plausibly allege that REN or Holder engaged in any acts that constituted an unconstitutional threat to YOM in the Public

Education Campaign. As the record shows, REN was engaged by MORE as "an independent consultant . . . in the areas of strategic consulting and education services." App.420.[6] In this capacity, REN worked on the Public Education Campaign and communicated with representatives of the State about its work. While YOM asserts that REN had decision-making authority over campaign materials (App.45–46), as the District Court correctly noted (Add.6 n.3), the exhibits on which YOM relies contradict this assertion. Instead, the exhibits make clear that REN offered input and suggestions consistent with its role as a private consultant, while the State retained ultimate decision-making authority. App.292 (Nov. 15, 2023 email "sending along . . . concepts *for commissioner office review*" and requesting confirmation of whether "this is all set *to go to commissioner for sign-off*") (emphasis added); App.54 (acknowledging that decision-making authority remained with the State). Accordingly, YOM's allegations concerning REN's work as a private consultant on the Public Education Campaign do not support the extension of Section 1983 to REN and Holder in this case.

---

[6] YOM has represented to this Court that "[t]he Commonwealth . . . formalized [REN] as a *full-time* government contractor." Opening Br. at 54 (emphasis added). This statement is not supported by any evidence in the record, including the portions of the record to which YOM cites in its own brief. It is one of a series of misstatements YOM has made to bolster its deficient claims. YOM cannot avoid dismissal of its claims by relying on mischaracterizations. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).

**B.** **REN's Receipt of Funding and Other Support from the State Did Not Transform REN and Holder into State Actors**

YOM's allegations in the Amended Complaint that the State provided funding for REN's Hotline and for the Public Education Campaign, and "support" for REN do not plausibly establish joint action, a close nexus, or a symbiotic relationship between REN and Holder and the Commonwealth. App.34–35, 61–62, 69, 72–73. As an initial matter, it is well-established that a private actor's receipt of funding and other assistance from the government does not transform that private actor into a state actor. *See Rendell–Baker*, 457 U.S. at 843 (a school's receipt of 90 to 99 percent of its funds from the state did not make it a state actor); *Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."); *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) (extensive government regulation and receipt of federal funds . . . are insufficient to establish state action); *see generally VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1160–61 (10th Cir. 2021) (receipt of state funds or assistance, state contracts with private entities, private use of state procedures, and involvement of state officials in administration of private processes do not, alone, satisfy the nexus test).

Moreover, REN is a private organization focused on research and public education about equitable access to reproductive health care. App.21, 93. REN launched the Hotline to help connect health care providers and helpers, as well as patients, with free legal advice and resources about their rights to access and provide lawful abortions. App.36; Add.13. The Hotline is managed and operated by REN, not by or in coordination with the State. App.35, 162. YOM has not alleged any facts which show that REN, Holder, and the State used the Hotline to subject YOM to unconstitutional threats or coercion. Nor could it.

The fact that the State chose to provide financial support for the Hotline, chose to undertake its own Public Education Campaign, and chose to engage private consultants to assist with the campaign does not render REN and Holder state actors for purposes of that work. To find otherwise would expose countless private recipients of government funding, contracts, and support to Section 1983 claims brought by anyone who disagrees with the organization's viewpoints. Section 1983 does not permit such a perverse result.

### C. REN and Holder's Filing of the DPH Complaint Was Not State Action and Cannot, as a Matter of Law, Support Liability Under 42 U.S.C. § 1983

In its Amended Complaint, YOM attempts to rely on the DPH Complaint to bridge the glaring gap in its state-action theory against REN and Holder. Specifically, YOM alleges that the DPH Complaint, along with one other complaint

made by REN[7], were "concocted" by REN and used by DPH as a "pretext" to justify the launch of its Public Education Campaign and release of guidance of which YOM complains. App.37, 50, 52, 59–60. These assertions do not plausibly allege a basis for treating REN and Holder as state actors for three independent reasons. First, the allegations are inconsistent with concessions YOM made to the District Court regarding the limited purpose for which it seeks to hold REN and Holder liable as state actors. App.563–64; Add.58. Second, the allegations are contradicted by YOM's own exhibits to its Amended Complaint (such as App.372). Third, REN and Holder's filing of the DPH Complaint was an exercise of protected petitioning activity to which Section 1983 liability does not attach.

> **i.  YOM's characterization of the DPH Complaint is inconsistent with the concessions it made to the District Court**.

At the hearing held before the District Court on REN's and Holder's Motion to Dismiss YOM's Amended Complaint, YOM conceded that, at most, REN and Holder acted under color of law only with respect to the Public Education Campaign, and not for the purpose of any exercise of state coercive authority against YOM. *See* App.563–64 ("The Court: [W]hat would be the scope of what [REN and Holder] are

---

[7]  YOM lacks standing to assert claims against REN or Holder on the basis of the complaint REN filed with DPH about Clearway Clinic ("Clearway") because Clearway is not a party to this litigation. App.47, 295; *see Dantzler*, 958 F.3d at 46–47. REN's complaint against Clearway concerned an aggrieved patient's alleged experiences at Clearway.

a state actor for? . . . Ms. Summers: [T]he media campaign.”); App.564 (“The Court: [T]hey're not a state actor for purposes of regulating doctors or licensees? Ms. Summers: No.”); Add.58 (“YOM conceded that . . . [REN and Holder], at most, acted under color of law only with respect to the state's media campaign, but not with respect to the exercise of any state regulatory authority.”). In doing so, YOM, itself, has acknowledged that the DPH Complaint is not a basis for treating REN and Holder as state actors for purposes of liability under Section 1983.

### ii. YOM's characterization of the DPH Complaint is contradicted by YOM's own exhibits.

“It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.” *Cheng*, 51 F.4th at 445 (citations omitted). In its Amended Complaint, YOM alleges that the DPH Complaint was “submitted in coordination with the State to justify the launch of Defendants' campaign against PRCs.” App.37. However, the exhibits YOM attached to the Amended Complaint make clear that the campaign was initiated *seven months* before the DPH Complaint was filed and months before the publication of statements by YOM's Executive Director that gave rise to the filing of the DPH Complaint. *See* App.93–99; App.372 (“The effort to ensure that these centers were operating appropriately has been a priority for this administration (and DPH) even before the complaints were filed.”).

The documents on which YOM relies demonstrably refute the allegation that

the DPH Complaint was used to justify the Public Education Campaign and underscore the implausibility of YOM's allegations. The exhibits also reflect statements by DPH that it would have, and believed it should have, undertaken the Public Education Campaign even if no complaints had been filed. App.379 ("[DPH] would be – and should be – doing this in the absence of any complaints. . . ."). Accordingly, YOM has not plausibly alleged that the DPH Complaint was a coordinated pretext for the acts of which YOM complains.[8]

### iii. The filing of the DPH Complaint was protected petitioning activity.

Moreover, REN and Holder's filing of the DPH Complaint cannot, as a matter of law, support a finding of liability against them because the filing was a protected exercise of REN's and Holder's First Amendment rights to petition the government. The *Noerr-Pennington* doctrine immunizes parties who exercise their right to petition the government from liability for that activity. *See Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000). Federal courts have recognized that this doctrine is applicable to Section 1983 claims. *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644–45 (9th Cir. 2009); *New W., L.P. v. City of Joliet*,

---

[8] YOM's allegations of general solicitation of feedback and complaints from individuals by DPH (App.29, 33), all of which post-dated the filing of the DPH Complaint, cannot serve as a linchpin between REN and Holder and the State here. *See Perkins*, 196 F.3d at 19–20 ("the focal point is the connection between the State and the challenged conduct").

491 F.3d 717, 722 (7th Cir. 2007); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). This case is not an exception.

As the exhibits attached to YOM's Amended Complaint make clear, the DPH Complaint raised a fact-supported "concern about potentially deceptive practices [YOM's] anti-abortion mobile unit appears to engage in and the resulting impact on pregnant people seeking care." App.26–28, 93. Specifically, REN made a factual report of an inconsistency between YOM's advertisement of its offering ultrasounds with "immediate" pregnancy results and a published statement of YOM's Executive Director that the results were only "preliminary findings" that needed to be reviewed and confirmed by an offsite physician within 24 to 48 hours. App.93–94. YOM does not dispute the fact or substance of its Executive Director's statement—which indicated either that the results of ultrasounds offered by YOM are not actually immediate or that the results are conveyed to patients by nurses prior to their being reviewed by a physician.[9] As a result, it was reasonable for REN to ask DPH, as the appropriate licensing authority, to investigate whether YOM "*may* be engaging in deceptive practices and *potentially* endorsing out-of-scope diagnoses by registered nurses in order to provide the advertised immediate results." *Id.* at 93 (emphasis

---

[9]     YOM acknowledges in its Amended Complaint that the final results of the ultrasounds it performs "are confirmed by a physician, then provided to the patients no more than twenty-four to forty-eight hours later." App.26.

added). This is precisely the type of petitioning activity that is recognized as protected under the *Noerr-Pennington* doctrine. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (*Noerr-Pennington* doctrine extends to petitions made to any branch of government, including administrative agencies); *Davric*, 216 F.3d at 147 (*Noerr-Pennington* doctrine "applies to 'petitions' before legislatures, administrative agencies, and courts").

YOM cannot bring the DPH Complaint outside the scope of the First Amendment's protections by invoking the narrow "sham" exception to the *Noerr-Pennington* doctrine. The exception applies only where petitioning activity is "objectively baseless in the sense that no reasonable litigant could expect success on the merits." *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993); *Davric*, 216 F.3d at 148.[10] YOM has not plausibly alleged any such facts in its Amended Complaint.

In fact, YOM's Amended Complaint **confirms** that DPH required YOM to amend its Policies and Procedures Manual "concerning the criteria for ultrasound exams" to eliminate "any language that allowed for sonographer discretion" (App.26), underscoring that REN's concerns about out-of-scope practices by YOM

---

[10]    The Supreme Court has made clear that courts may only examine the subjective motivation for petitioning activity if the challenged petitioning activity is objectively meritless. *Prof.'l Real Estate Investors*, 508 U.S. at 60.

were not objectively baseless. App.94 (reporting REN's "concerns regarding Your Options Medical's claim to be able to provide appropriate and in scope diagnostic ultrasound services"); *see Davric*, 216 F.3d at 148 (holding that a successful effort to influence governmental action cannot be characterized as a sham). Similarly, the investigation undertaken by BORIM of YOM's Medical Director, which a Massachusetts state court held was within BORIM's authority to conduct and declined to enjoin (*see* App.416–18), further confirms the legitimacy of REN's concerns. *See Prof'l Real Estate Investors*, 508 U.S. at 62 (existence of probable cause to institute legal proceedings, which requires no more than a chance that a claim may be held valid upon adjudication, precludes a finding of sham litigation). The sham exception to the *Noerr-Pennington* doctrine is inapplicable as a matter of law.

Because the very evidence on which YOM relies in support of its claims against REN and Holder makes clear that the DPH Complaint was a fact-supported exercise of REN's and Holder's right to petition the government, the DPH Complaint cannot serve as a basis for imposing liability on REN and Holder under Section 1983. *See Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003) (private parties' furnishing of "information on which official action is then taken does not by itself convert the private parties into state actors").

**D. REN's and Holder's Speech and Advocacy Are Not State Action**

The remaining allegations YOM asserted against REN and Holder in its Amended Complaint likewise do not plausibly establish that REN or Holder engaged in any unconstitutional threats or coercion, or any regulation or exercise of control over YOM. Instead, the allegations target REN's and Holder's private speech, research, and advocacy on an issue of public concern: access to reproductive health care. *See* App.34–38. REN's independent website that references AACs, its guidebook expressing its viewpoint on AACs and supplying information about the public's reporting options, and its (and Holder's) statements about their work are private actions which cannot form the basis of Section 1983 liability. *See Barrios-Velazquez v. Asociación de Empleados del Estado Libre Asociado de P.R.*, 84 F.3d 487, 492 (1st Cir. 1996) ("A private entity's conduct is not actionable under section 1983 if the challenged action results from the exercise of private choice and not from state influence or coercion.").

REN and Holder are private parties who have ***their own constitutional right*** to engage in free speech, including speech with which YOM disagrees. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power."). REN and Holder do not lose that constitutional right simply because their view aligns with one held by state actors.

42

*See Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 756, 759 (9th Cir. 2024) ("Statements that government officials engaged with social media companies to ensure [they] understand the importance of misinformation and disinformation and how they can get rid of it quickly" were consistent with parallel objectives and not evidence of a specific agreement for purposes of the joint-action analysis.) (internal quotation marks omitted).

## III. YOM FAILED TO PLAUSIBLY ALLEGE THAT REN OR HOLDER CAUSED A DEPRIVATION OF YOM'S CONSTITUTIONAL RIGHTS

As YOM has failed to allege sufficient facts to show that REN and Holder engaged in state action, the Court's inquiry into Section 1983 liability for alleged constitutional violations on the part of REN and Holder must end. *Yeo v. Town of Lexington*, 131 F.3d 241, 248–49 (1st Cir. 1997) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). However, even if YOM had alleged sufficient facts to show that REN and Holder are state actors, YOM's claims against REN and Holder must nonetheless fail.

YOM's pleading burden is not limited to plausibly alleging state action on the part of REN and Holder. To withstand dismissal, YOM must also plausibly allege that REN and Holder each caused a deprivation of YOM's constitutional rights through the alleged state action. *See Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) ("To satisfy the second element [of a Section 1983 claim], plaintiffs

must show that the defendants' conduct was the cause in fact of the alleged deprivation.").

Despite having had multiple opportunities to do so, YOM failed to articulate how REN's and Holder's actions have deprived YOM of its ability to exercise its constitutional rights—an omission that remains fatal to its claims. There is no dispute that REN and Holder do not have any regulatory or enforcement authority. As the District Court correctly noted, REN and Holder also "did not (and could not) make any sort of threat to wield state authority against YOM." Add.58.

For these reasons, YOM's reliance on *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) is misplaced. In *Vullo*, the Supreme Court held that the National Rifle Association ("NRA") plausibly alleged that Vullo, a superintendent of the New York Department of Financial Services with regulatory and enforcement authority over all entities doing business in New York, violated the First Amendment by using the power of her office to coerce entities to end their business relationships with the NRA through threats of sanctions against them. 602 U.S. at 187–94. No such facts are alleged against REN and Holder here because they cannot be. As YOM has already conceded, REN and Holder are private parties with no regulatory or enforcement authority. *See* App.564. Further, YOM's Amended Complaint does not plausibly allege any facts demonstrating that REN or Holder was a joint participant

in any regulatory or enforcement action, much less one that resulted in a deprivation of YOM's constitutional rights.

To the contrary, YOM's own allegations establish that it continues to operate and still maintains a website promoting its services and views on reproductive health issues. App.22–23.[11] The public has not been prevented from seeking out and receiving YOM's services, and YOM has not been prevented from expressing its views or pursuing its mission consistent with those views. As YOM conceded at the hearing before the District Court, criticism—even if "aggressive" and "scalding"— does not amount to a constitutional deprivation.[12] *See* App.466–68; App.489 ("The Court: [T]hey can criticize, right? . . . Ms. Summers: Yes . . . . The Court: And even scalding criticism, right? Ms. Summers: Yes.").

Because YOM failed to plausibly allege that REN or Holder caused a deprivation of YOM's constitutional rights, its claims against REN and Holder must fail. *See Estades-Negroni*, 412 F.3d at 4 ("If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant

---

[11] YOM's naked assertions that one of its doctors quit providing services and that it has incurred additional costs for security because of "threats" by "Defendants," are insufficient to survive a motion to dismiss. App.66–67. Moreover, YOM does not identify any "threats" made by either REN or Holder.

[12] The Court may consider YOM's concessions in analyzing and affirming REN and Holder's motion to dismiss. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012) (citation omitted).

or defendants acted under color of state law, then the § 1983 claim is subject to dismissal.").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the District Court's February 17, 2026, Order of Dismissal in favor of REN and Holder.

Respectfully submitted,

DEFENDANTS-APPELLEES
REPRODUCTIVE EQUITY NOW
FOUNDATION, INC. AND REBECCA HART
HOLDER,

By their attorneys,

/s/ *Martin Fantozzi*

MARTIN FANTOZZI (1st Cir. Bar No. 50503)
MARIANA KORSUNSKY (1st Cir. Bar No. 1142232)
CARLA A. REEVES (1st Cir. Bar No. 1162897)
SARAH EBERSPACHER (1st Cir. Bar No. 1199104)
KATHLEEN RITTER (1st Cir. Bar No. 1222872)
KIMAN KAUR (1st Cir. Bar No. 1209467)
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
(617) 482-1776
*mfantozzi@goulstonstorrs.com*
*mkorsunsky@goulstonstorrs.com*
*creeves@goulstonstorrs.com*
*seberspacher@goulstonstorrs.com*
*kritter@goulstonstorrs.com*
Dated: July 31, 2026        *kkaur@goulstonstorrs.com*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32, the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7).

Exclusive of the accompanying documents as authorized by Fed. R. App. P. 32(a)(7)(B) and the exempted portions of the brief as provided by Fed. R. App. P. 32(f), the brief contains 8,765 words.

The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font as provided by Fed. R. App. P. 32(a)(5)-(6). As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Kiman Kaur*
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
(617) 482-1776

Dated: July 31, 2026

## CERTIFICATE OF SERVICE

I, Kiman Kaur, hereby certify that on this 31st day of July, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Kiman Kaur*
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109
(617) 482-1776